WELLS, EXECUTRIX *v.* HAYES.

5-2855                                              362 S. W. 2d 700

Opinion delivered December 17, 1962.

*Roy Finch, Jr.* and *Thorp Thomas,* for appellant.

*Sharp & Sharp,* for appellee.

CARLETON HARRIS, Chief Justice. Appellants, Ruby A. Wells and R. L. Wells, are the wife and son, respectively, of L. L. Wells, deceased. Mrs. Wells is executrix of her late husband's estate. During his lifetime, L. L. Wells operated a busness known as "Arkansas Tastee Freez," a distributor in this state for the sale of "Tastee Freez" ice cream stores. Mrs. Wells and the son worked with Mr. Wells in the business during the period of time hereinafter referred to. On February 27, 1954, L. L. Wells and R. L. Wells,[1] d/b/a Arkansas Tastee Freez Company, entered into a contract with Randall Hayes and Jennie V. Hayes, husband and wife, and appellees herein, wherein the former agreed to sell their Tastee Freez business, including the realty and improvements, for the sum of $12,200. On the same date, a contract was entered into between the parties whereby Arkansas Tastee Freez Company leased to appellees, for a period of

---

[1] The record does not make entirely clear the interest of R. L. Wells in the business. Appellants' brief speaks of him as an employee, but, as herein set out, he did join in the contracts.

six years,[2] certain equipment used in making the ice cream and further agreed to sell (and the purchaser to buy) Harlee Freezers, to be likewise used. The agreement, *inter alia,* provided that appellees would use only Tastee Freez mix (or such other mix as approved by lessor), and they were to purchase the mix at the price of $1.24 per gallon, less a rebate at the end of the year. This price included a 30 cents per gallon surcharge, of which 10 cents, according to the contract, was to be sent to Harlee Manufacturing Company for advertising. Appellees further agreed to use only supplies, such as flavors, sundae toppings, spoons, containers, straws, uniforms, etc., that had been approved by the lessor, and to use only such equipment in connection with operating the freezers and feeders as had been approved by the lessor. Numerous other provisions were included which are not particularly pertinent to this litigation. The last paragraph of the agreement provides,

"It is further agreed that in the event of the cancellation of this agreement, the Lessor shall have the right and option to purchase the Harlee Freezers and special topping cabinet sold to Lessee at the Lessee's cost thereof less an amount equal to 50% of said cost as depreciation for the first year or any part thereof, an additional amount equal to 20% as depreciation of said equipment for the second year or any part thereof, and an additional amount equal to 5% of the cost of said equipment as and for depreciation in each of the third, fourth, fifth, and sixth years."

Pursuant to the agreements, appellees purchased the business (which admittedly has been completely paid for) and used the Tastee Freez mix in 1954, 1955, 1956 and part of 1957. The 30 cents surcharge was paid monthly until March 9, 1957, when appellees, through their then attorney, advised the Arkansas Tastee Freez Company that they would no longer use this mix, and the

---

[2] The contract provided that the lease would be automatically renewed for successive periods of six years each, unless either of the parties advised the other to the contrary, in writing, at least 30 days prior to the conclusion of any six-year period.

30 cents surcharge was not paid subsequent to that date. After that time, appellees commenced using a mix other than Tastee Freez, and without approval of appellants. In the March 9 letter, appellees advised Arkansas Tastee Freez Company that it could pick up the feeders, and could purchase the freezer on the terms outlined in the last paragraph of the agreement. No reply was received to the letter, and on August 7, counsel for appellees again advised Arkansas Tastee Freez that the agreement was being cancelled and the equipment could be picked up. On August 10, L. L. Wells sent his check for $468.55 as per the terms of the lease agreement, to cover the cost of the Harlee freezer, topping bar, deep freeze and topping rail, advising that the items would be picked up the following week. This was subsequently done. L. L. Wells died on January 24, 1958. On August 23, 1958, appellants instituted their complaint against appellees, alleging that the latter had breached their agreement (by ceasing to use Tastee Freez mix) and that there were due, as royalties, 30 cents per gallon for each gallon of ice cream mix used since March 9, 1957. An accounting was prayed, and appellants sought judgment in whatever amount might be found to be due them.[3] On trial, the court dismissed the complaint. From the decree so entered, appellants bring this appeal.

The evidence reflects that appellees, after March 9, 1957, sold 3,210 gallons of mix during the balance of that year, 3,810 in 1958, and 2,360 in 1959. In their brief, appellants contend that, based upon the 30 cents per gallon surcharge, they should have received judgment for the sum of $2,814.00. We do not quite understand how appellants contend for this amount, inasmuch as the proof shows that 10 cents of the 30 cents was to be paid to the Harlee Manufacturing Company for local and national advertising, and 10 cents was to be sent to the National Buying Association to help pay the operating cost for that organization.[4] However, inasmuch as we agree that

[3] Appellants alleged that they believed that the amount would be in excess of $50,000.

[4] The association purportedly operated for the purpose of permitting lessees to purchase products cheaper (by buying through the association).

the chancellor correctly dismissed the complaint, this matter is immaterial.

The contentions of each are simple. Appellants simply assert that Mr. and Mrs. Hayes breached the contract. Appellees assert two defenses, alleging that they were induced into entering into the agreement through false representations, and further, that the lease agreement between the parties was cancelled. The first mentioned deals with the complaint of appellees that, though they had been told that products could be bought much cheaper by buying through the Tastee Freez National Buying Association, actually the prices were much higher. This was a reference to the mix, topping for ice cream sundaes, spoons, and various other supplies that were purchased. It is also asserted that no technical assistance was provided by the company relative to the operation of equipment, as set forth in the contract. It is not necessary that we discuss this contention (false representations) for we think the litigation is definitely determined by the provisions of the last paragraph of the agreement, heretofore referred to.

It may be (though this is not argued by appellants) that the company, in including this cancellation paragraph in its printed contract, intended that it become operative only at the conclusion of the six year term of the lease, *i.e.,* in event one or both of the parties did not desire to renew the agreement. However, there is nothing in the contract which so provides; that instrument simply recognizes the right of cancellation, and Mr. L. L. Wells, evidently the principal operator of Arkansas Tastee Freez Company, likewise, recognized the right of cancellation. This is definitely shown by his actions subsequent to receiving the communication from appellees' counsel. The August 7 letter in behalf of appellees to Arkansas Tastee Freez Company advised as follows:

"Gentlemen:

"On March 9 I advised that Randall Hayes and Jennie V. Hayes of Clarendon, Arkansas, did not intend to continue in the sale or further use of Tastee Freez

products and were cancelling their agreement with you. I also advised you that you could pick up the Harlee Manufacturing Company feeder or feeders and that you could purchase the Harlee freezer if you so desired. To this date I have not heard from you concerning same. If I do not hear from you concerning the purchase of the Harlee freezer within ten days from the date of this letter I will assume you do not wish to purchase same and Mr. and Mrs. Hayes will make other disposition of same.

"Yours very truly,"

On August 12, Mr. Wells replied as follows:

"Dear Sir:

"Enclosed you will find my check for $468.55 to cover the costs of the 2500 Harley freezer, complete with pump and the Anheiser-Busch topping bar, deep freeze and the topping rail.

"This is in accord with the operator's agreement and depreciated as per their schedule of 50% for the first year or fraction thereof; 20% for the second year then 5% for the third year or fraction thereof.

"The original cost of the equipment was $1445. on the freezer and $430. on the deep freeze complete.

"I will arrange to have this picked up some time next week.

"Respectfully,"

Moreover, though Wells did not die until nearly six months later, no action was taken by him on account of a breach of contract, nor does the record reflect that he ever made any such contention. In fact, neither Arkansas Tastee Freez, nor any one in their (its) behalf, ever made any demand on appellees for the surcharge before the filing of this action. It would certainly seem that if Mr. Wells, or appellants, considered that appellees had breached the contract, legal steps would have been taken; actually, if such a view were held, it is somewhat puzzling that action was not commenced when the letter of March

9 was received, some five months before Wells exercised his right to purchase the equipment. Be that as it may, we think unquestionably that the agreement was cancelled by the *actions of the parties*. According to Webster's Third New International Dictionary, the word "cancel," *inter alia,* means "revoke, annul, invalidate, remove from significance or effectiveness, call off." This is exactly what happened in this instance, and it might be here mentioned that Mr. Wells, in joining in the cancellation, received certain benefits, in that he was able to purchase the equipment heretofore mentioned at a price which, according to the testimony, was considerably less than the value of said equipment.[5]

It follows, from what has been said, that we find no merit in appellants' contention that the trial court committed error in denying them judgment for damages for breach of contract.

Affirmed.

---

[5] For instance, there was testimony that Hayes had the opportunity to sell the freezer alone for $750.00.